J-A03023-20

2020 PA Super 176

| | |
|---|---|
| STEVEN L. TALMADGE, ADMINISTRATOR OF THE ESTATE OF DEBRA ELIZABETH TALMADGE, DECEASED AND STEVEN L. TALMADGE, INDIVIDUALLY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| FRANK H. ERVIN, R.PH., CARL'S DRUG STORE, INC., NATHAN DERSTINE, D.O., AND GREENCASTLE FAMILY PRACTICE, P.C. | |
| Appellee | No. 1070 MDA 2019 |

Appeal from the Order Entered June 3, 2019
In the Court of Common Pleas of the 39th Judicial District, Franklin County
Branch, Civil Division at No: 2013-04640

BEFORE: LAZARUS, STABILE, JJ., and STEVENS, P.J.E.*

OPINION BY STABILE, J.: **FILED JULY 28, 2020**

Appellant, Steven L. Talmadge, in his own right and as administrator of the estate of decedent Debra Elizabeth Talmadge ("Decedent"), appeals from the June 3, 2019 judgment entered in favor of Appellees, Frank H. Ervin ("Ervin"), R.PH., Carl's Drug Store, Inc. ("Carl's"), Nathan Derstine, D.O. ("Dr. Derstine"), and Greencastle Family Practice, P.C. ("Greencastle"). We vacate and remand for a new trial.

---

* Former Justice specially assigned to the Superior Court.

The trial court recited the pertinent facts in its opinion denying post-trial relief:

> The instant medical malpractice action arises from the untimely death of Debra Talmadge on November 29, 2011. At the time of her death, [Decedent] was under the medical care and supervision of [Dr. Derstine], a physician and partner at the [Greencastle].
>
> On November 22, 2012, [Decedent] presented at [Greencastle] with complaints of nausea; she was prescribed and began taking Phenergan in addition to her long-term prescription for Lexapro. On November 25, 2011, five days prior to her death, [Decedent] again sought treatment from Dr. Derstine. Based on [Decedent's] symptoms, Dr. Derstine suspected pneumonia and prescribed Biaxin.
>
> [Decedent's] Biaxin prescription was later filled at [Carl's], by on-duty pharmacist Shane Clugston, under the supervision of [Ervin].

Trial Court Opinion, 6/3/19, at 1-2 (footnotes omitted).

Several days later, Decedent passed away. Appellant filed this medical malpractice action against all Appellees on November 19, 2013. Appellant alleged that the interaction between Phenergan, Lexapro, and Biaxin triggered a condition called prolonged QT syndrome that caused Decedent's death. The jury entered a defense verdict on February 13, 2019. Appellant filed a timely post-trial motion alleging that the trial court erred in granting Appellee's pretrial motion *in limine*, and in finding Appellee's expert witness to be qualified to testify in this matter. The trial court denied Appellant's post-trial motions on June 3, 2019, and this timely appeal followed.

The following principles govern our review:

[O]ur standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment.

*Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 707 (Pa. Super. 2000), *appeal denied*, 785 A.2d 90 (Pa. 2001).

First, Appellant challenges the trial court's order granting Appellees' pre-trial motion *in limine* to exclude a document contained with the Pennsylvania State Police report and Appellant's expert's testimony as to that document. We review evidentiary rulings for abuse of discretion. *Czimmer v. Janssen Pharmaceuticals, Inc.*, 122 A.3d 1043, 1058 (Pa. Super. 2015). The document in question (the "Pill Count Document") was an unsigned, handwritten note indicating that Decedent was prescribed twenty pills of Biaxin, of which twelve remained in the bottle after her death. The Pill Count Document was part of the police investigation file, produced in response to Appellees' subpoena. The matter arose during the pre-trial recorded deposition testimony of Appellant's expert witness, Dr. Douglass Peter Zipes. The deposition was recorded for use at trial, and was introduced in redacted form after Appellees' successful motion in *limine*.

Appellant wished to argue, based on the date of the prescription and the date of death, that Decedent ingested all eight of the missing pills, which would have been in accord with the prescribed dosage over that time. Appellees' argument was that there was no direct evidence Decedent took more than one Biaxin; the pill that Appellant saw her ingest. The autopsy toxicology screen did not reflect Biaxin present (though it is unclear whether the person conducting the autopsy screened for Biaxin). N.T. Zipes Deposition, 1/29/19, at 45. No one other than Appellant reported seeing Decedent take a Biaxin, and he saw her take only one. *Id.* at 46.

The trial court ruled that the Pill Count Document was hearsay, and that Appellant did not authenticate it under the business records exception (Pa.R.E. 806) because it was handwritten and unsigned.[1] Nonetheless, the trial court permitted Appellant to attempt to authenticate the Pill Count Document at trial by calling the State Police Officer who prepared and produced the report. Appellant did not do so.

Presently, Appellant argues that Appellees' objections during the deposition were insufficient to preserve this issue. Appellant relies on Pa.R.E. 103(a)(1), which requires the party opposing the evidence to make a timely

---

[1] We are cognizant that the law permits experts to rely on hearsay in forming their opinions. *See **Klein v. Aronchick***, 85 A.3d 487, 502 (Pa. Super. 2014), ***appeal denied***, 104 A.3d 5 (Pa. 2014). Here, Appellant's expert did not rely on the Pill Count Document in the preparation of his written report, and Appellant does not argue that the expert was entitled to rely on hearsay in giving his testimony.

objection and state the grounds for it. The trial court concluded that counsel for Dr. Derstine and Greencastle sufficiently preserved this issue in the following exchange during Dr. Zipes' examination by counsel for Dr. Derstine, and Greencastle:

> Q. Doctor, I'm looking at the two last paragraphs there that indicate according to the report by Dr. Wayne Ross – and Dr. Wayne Ross is the pathologist hired by the plaintiffs in his case, correct?
>
> A. I think that's correct, yes.
>
> Q. Not the pathologist that actually did the autopsy in this case.
>
> A. Yes.
>
> Q. What you're saying is in his report he believes Mrs. Talmadge took one pill on the 25th, the day she got the prescription of Biaxin, correct?
>
> A. Yes.
>
> Q. Two pills on the 26th and 27th and one on the 28th. See that?
>
> A. I do.
>
> Q. Then she's found dead in bed on the 29th?
>
> A. Yes.
>
> Q. So have you based your understanding of her taking Biaxin on what Dr. Ross opined in his report?
>
> **A. Yes, I've been shown a police report, which I did not have when I wrote my report that indicates that –**
>
> **Q. Objection. Objection. Just stick to things you had at the time of your report, Doctor.**

N.T. Zipes Deposition, 1/29/19, at 39-40 (emphasis added).

At the time of the foregoing objection—the only one Appellees lodged on this issue during the deposition—counsel for Dr. Derstine and Greencastle was unaware the Pill Count Document existed. This is evident from a subsequent exchange:

Q. We can agree no pill count was done by anybody involved in the autopsy?

A. I lost that last half. The pill count was done and –

Q. There was no pill count done, period?

A. I was shown a police report that had a pill count that there were 12 pills left out of the 20.

Q. Where did you get that from?

A. Counsel.

Q. When did you get that?

A. Couple days ago.

N.T. Zipes Deposition, 1/29/19, at 46-47. Counsel for Dr. Derstine and Greencastle did not pursue the matter further at that time.

Subsequently, counsel for Ervin and Carl's followed up:

Q. Let me circle back to your testimony earlier about the pill count and your testimony about how many pills [Decedent] had taken. All right?

A. Yes, sir.

Q. I want to understand if we can go back to your report, D27, page 4, can we pull that back up? The same paragraph that was highlighted previously, the first one on that page, please. Can you see that, doctor?

A. Yes.

Q.     Okay.   I think you already told [counsel for Dr. Derstine and Greencastle] and we read in your report that you state according to the report by Dr. Wayne Ross, then you list the pills you believe [Decedent] was taking from the 25th through the 28th, correct?

A.     That's correct.

Q.     That's what it says there, correct?

A.     Yes.

Q.     Can we also agree if we turn to page 1 of your report, can we pull that up, there we go, that nowhere in the materials that you reviewed is the police report that you referenced listed; is that right?

A.     That's correct.  I did not have it at that time.

Q.     Okay.  Am I also correct, sir, you did not author any supplemental report in which you reference reviewing a police report to substantiate your conclusions about what [Decedent] was taking, correct?

A.     Correct.

Q.     Do you have any idea whether Dr. Ross reviewed a police report when he reached his conclusion about the pills she may have been taking?

A.     I have no idea.

Q.     Okay.  Is it fair to say, sir, as you sit here today testifying you have not included any reference to a police report or relied upon a police report in the report that is the basis for your opinions in this case, correct?

A.     That's correct.

*Id.* at 53-54.  Thus, this line of inquiry established only that Dr. Zipes did not have the Pill Count Document, or any other part of the police file, when he prepared his expert report.

Finally, on re-cross examination, counsel for Dr. Derstine and Greencastle examined Dr. Zipes in more detail on the police report:

        Q.      Doctor […] I have the police report sitting in front of me.  Can you point out to me where there's a pill count in there?

        A.      I don't have it in front of me.  I don't remember.  It's page—it's well into the report.  I don't remember what page but it's there.

        Q.      Okay.

        A.      Counsel could point it out to you.

        Q.      I believe I have the whole report here, Doctor, and there is no pill count in here.  You say there is.  You say you've got some document that purports to have a pill count on it?

        A.      That's correct.  I don't have – the document's on my computer.  I don't have that with me.

        Q.      Okay.  Thank you very much.

        A.      The document showed 20 pills.

        [Defense counsel]:  There's no question, doctor.

*Id.* at 57-58.

On redirect examination, Appellant's counsel finally introduced the Pill Count Document:

        Q.      Okay.  Can you put up plaintiff's exhibit 1337, please?  Is that the pill count you were talking about?

        A.      That's it exactly.

        Q.      Those are all the questions I have – wait.  Actually one more question.  The medication listed at the bottom, is that clarithromycin?

        A.      Yes.

        Q.      Is that Biaxin?

- 8 -

A.     Yes.

Q.     If we look at the dosage, is that 500 milligrams once per day or twice a day?

A.     That's twice a day, b.i.d.

Q.     Okay.  Under number dispensed, that's 20, right?

A.     Correct.

Q.     Then the number found is?

A.     Twelve.

Q.     So do the math for me.  How many are gone?

A.     Eight.

*Id.* at 59-60.

Neither of Appellees' lawyers objected when Appellant introduced the Pill Count Document, *i.e.* plaintiff's exhibit 1337.  Moreover, Appellant's introduction of the Pill Count Document during re-direct was directly responsive to questions Appellees' posed on cross-examination.  Thus, the trial court relied on Appellees' lone objection, bolded in the first exchange quoted above, in support of its conclusion that Appellees' preserved the issue. The trial court believed Rule 4016(c) supported its result.

> (c) Errors and irregularities   occurring at the oral examination in the manner of taking the deposition, in the form of oral questions or answers, in the oath or affirmation, or in the conduct of parties and errors of any kind which might have been obviated, removed, or cured if objections had been promptly made, are waived unless seasonable objection is made at the taking of the deposition.

Pa.R.C.P. No. 4016(c).

The trial court concluded that the initial objection ("Objection. Just stick to things you had at the time of your report, Doctor."), combined with Appellees' motion in *limine*, was sufficient to obviate this error prior to trial, when the parties introduced a redacted version of Dr. Zipes' deposition into evidence. The trial court admitted a redacted version omitting references to the Pill Count Document. Dr. Zipes gave his deposition by video conference from Bonita Springs, Florida. N.T. Zipes Deposition, 1/29/19, at 4. The deposition was to be used at trial, in lieu of having Dr. Zipes appear at trial. Significantly, the transcript reflects no stipulation deferring objections to the time of trial.

We observe that Rule 4016(c), is titled "Taking of Depositions. Objections." Pa.R.C.P. No. 4016. Subsection (c) governs errors of any kind, and requires that an objection be "promptly made" and "seasonable … at the taking of the deposition." In construing the Rules of Civil Procedure, this Court looks to the rules of statutory construction. **Horwath v. DeGrazio**, 142 A.3d 877, 880 (Pa. Super. 2016). The intent of our Supreme Court controls, and the best evidence of that intent is the rule's plain language. **Id.**; **see also** 1 Pa.C.S.A. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.") 1 Pa.C.S.A. § 1921(b).

We conclude that Appellees' lone objection did not comply with the plain language of Rule 4016(c). The only objection occurred when Dr. Zipes began

to discuss the police report in general, without any reference to the Pill Count Document. Subsequent exchanges establish that counsel for Dr. Derstine and Greencastle was unaware of the Pill Count Document when the objection was lodged. Indeed, counsel later revisited the pill count issue and asked Dr. Zipes to confirm that no pill count was done. Dr. Zipes disagreed, but could not produce the document he had in mind. Appellant's counsel introduced the Pill Count Document, identified as plaintiff's exhibit 1337, and examined Dr. Zipes on it with no objection from Appellees. Thus, there was no specific objection to the Pill Count document at the deposition, much less a prompt, seasonable one. Appellees' subsequent motion in *limine* does not change the result, inasmuch as Rule 4016(c) expressly requires an objection at the taking of the deposition.

For additional guidance, we look to Rule 4020, titled "Use of Depositions at Trial." Pa.R.C.P. No. 4020.[2] In particular, Rule 4020(c) states: "Subject to the provisions of Rule 4016(b), objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." Pa.R.C.P. No. 4020(c). Our Supreme Court has addressed the relationship of Rules 4020 and 4016:

---

[2] Rule 4020(a)(5) permits the deposition of a medical witness to be used at trial regardless of the availability of the witness. Pa.R.C.P. No. 4020(a)(5). Similarly, pursuant to Rule 4017(g), a video deposition of an expert witness may be used at trial regardless of the witness' availability.

Read together, Pa.R.Civ.P. 4020(c) and 4016(b), […] provide that, while an objection may be made at trial to the introduction of any part of a deposition in the same manner as if the deponent were then testifying, the failure to object during the taking of the deposition will preclude an objection at trial if 'the ground of the objection is one which was known to the objecting party and which might have been obviated or removed if made' at the time of the deposition.

*Starner v. Wirth*, 269 A.2d 674, 677 (Pa. 1970). Where, however, the parties stipulate to reserve all objections until trial, the court will honor the stipulation. *Id.* Instantly, there was no stipulation to reserve objections, the Pill Count Document was in the possession of all parties prior to the deposition, and Appellees failed to object when Appellant's counsel introduced it on re-direct examination, in direct response to Appellees' questions on cross examination. The only objection in the passages quoted above—that Dr. Zipes confine his testimony to items he considered in preparation of his expert report—did not address the Pill Count Document, much less object to that document as inadmissible hearsay. Appellees could have made a hearsay objection when Appellant's counsel introduced the Pill Count Document, but they failed to do so. We therefore conclude that Appellees failed to preserve their objection to the Pill Count Document in accord with Rules 4016, 4020, and our Supreme Court's analysis in *Starner*. Moreover, since the number of Biaxin pills Decedent ingested was an important issue at trial, we cannot

conclude the error was harmless. We therefore vacate the judgment and remand for a new trial.[3]

Because we have concluded Appellees waived their objection to the Pill Count Document, we need not address Appellant's argument that it was admissible under Pa.R.E. 806. We will, however, address Appellant's argument that the trial court erred in finding Harvey Millman, Ph.D., expert for Appellees Ervin and Carl's, qualified to testify, as that issue may present itself again on retrial.

> Whether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court. It is well settled in Pennsylvania that the standard for qualification of an expert witness is a liberal one. When determining whether a witness is qualified as an expert the court is to examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation.
>
> The determination of whether a witness is a qualified expert involves two inquiries:
>
> When a witness is offered as an expert, the first question the trial court should ask is whether the subject on which the witness will express an opinion is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman. ... If the subject is of this sort, the next question the court should ask is whether the witness has sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.

_____

[3] Although we have concluded Appellees did not timely object to preserve their issue regarding the Pill Count Document, it remains that upon retrial the admissibility of this document will again be at issue, since both parties, barring any stipulation to the contrary, will be presenting their evidence and objections *de novo*.

*Wexler v. Hecht*, 847 A.2d 95, 98–99 (Pa. Super. 2004) (internal citations and quotation marks omitted), *affirmed*, 928 A.2d 973 (Pa. 2007).

Appellees Ervin and Carl's Drug Store proffered Dr. Millman as an expert in pharmacy practice, pharmacology, and toxicology. Appellant argues Dr. Millman was not qualified in any respect as to the latter two, and that he demonstrated no knowledge of the computer systems used in present-day pharmacy practice. The record reveals that Dr. Millman had been a licensed pharmacist for 30 years, approximately ten of which were in retail and clinical pharmacy. He also worked for the United States Public Health Service, the National Cancer Institute, and the Environmental Protection agency, during his pharmacy career. He gave up his license in 2004, but remains a member of the American Pharmacists Association and continues to review its publications.

At trial, Dr. Millman opined only as to pharmacy practice: he opined that Ervin and Carl's Drug Store complied with the standard of care for pharmacy practice.[4] In particular, he noted that a review of Decedent's prescribed drugs would have been by the CVS computer system, Dr. Derstine's computer system, and the insurance company's computer system. The retail pharmacist was not required to obtain a list of Decedent's medications before dispensing the drug, and Appellant, who picked up the Biaxin on Decedent's

---

[4] We therefore need not address his qualifications as to pharmacology and toxicology.

behalf, declined counseling from the pharmacist. Given the limited nature of Dr. Millman's testimony, the length and breadth of his career in pharmacy, and the liberal standard for determining an expert's qualifications, we discern no error in the trial court's decision.

Based on the foregoing, we vacate the judgment and remand for a new trial.

Judgment vacated. Case remanded for new trial. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>07/28/2020</u>