J-S42032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| REBECCA L. WILLIAMSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRICK MASON | : | |
| | : | |
| | : | |
| Appellant | : | No. 549 MDA 2025 |

Appeal from the Order Entered April 16, 2025
In the Court of Common Pleas of Dauphin County Domestic Relations at
No(s): 00084-DR-21, PACSES Case No. 102300694

BEFORE:    OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: FEBRUARY 5, 2026**

Derrick Mason ("Mason") appeals from the order denying his petition for a writ of *habeas corpus*, which sought immediate release from imprisonment following a civil contempt finding for failure to pay child support. We vacate and remand.

Generally, the parties do not dispute the underlying procedural history. On March 8, 2024, Mason appeared *pro se* before the trial court for a brief contempt hearing. Mason did not deny his failure to pay child support. He affirmed that he had both full-time and part-time jobs, and that he could pay $300 monthly in arrears in addition to his regular child support payment. The trial court found Mason in contempt of court. In its written contempt order, the court set forth a sentence of six months' probation, with the first month

"having restrictive conditions in the form of . . . work release."[1]  Order of Contempt, 3/14/24.  The court stated Mason could purge himself of the contempt by paying $300 monthly, in addition to his regular child support amount, until he repaid the total arrears of $5,485.  Mason did not appeal from this contempt order.

The next filing in the certified record is an order, dated ten months later on January 28, 2025, stating in sum: "[Mason] having failed to comply with the conditions of the court order dated March 8, 2024, the court issues a capias/bench warrant for their arrest to appear before the court."  Order, 3/13/25 (unnecessary capitalization omitted).  However, this order was not stamped as "filed," nor entered on the trial docket, until a month and a half later, on March 13, 2025.

Meanwhile, a docket entry of February 4, 2025, described that a "request for a hearing to issue a bench warrant against [Mason] was filed."[2]

_____

[1] In open court, however, the trial court announced a sentence of merely one month's imprisonment with work release.  **See** N.T., 3/8/24, at 4.  **See also Commonwealth v. Kremer**, 206 A.3d 543, 548 (Pa. Super. 2019) (stating that "[g]enerally, the signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence," and "[t]he presumption that the written sentencing order is what the sentencing judge intended increases with the length of time that the written sentencing order goes unchallenged").  Mason has not challenged, either in the underlying petition for a writ of *habeas corpus* or this appeal, this discrepancy.

[2] We note the trial docket also included entries for orders in August and September 2024 and January 2025, for Mason's employer to attach his income and later to terminate the income attachment.

- 2 -

Trial Docket, 6/13/25, at 7 (unnecessary capitalization omitted). However, the docket entry did not identify the filing party, and there is no corresponding filing in the certified record.

On March 25, 2025, present counsel, Lisa Hopkins, Esquire, entered her appearance on behalf of Mason. Three days later, on March 28, 2025, Mason filed a counseled motion to lift or quash the bench warrant, averring he was arrested and detained the day before. Mason requested an expedited hearing pursuant to Pa.R.Crim.P. 150, which requires a hearing within seventy-two hours of an arrest on a bench warrant.[3] Mason further claimed, *inter alia*, that his wages had been attached, he made additional child support payments, and thus he had complied with the requirement to pay an extra $300 monthly.[4] On the same day, the trial court: (1) issued an order vacating the bench warrant; but (2) directed remand of Mason to the county prison to serve one month's imprisonment, with work release. The court did not hold a hearing.

Next, on April 16, 2025, Mason filed the underlying petition for a writ of *habeas corpus*, seeking immediate release from custody. Mason alleged: (1)

---

[3] **See** Pa.R.Crim.P. 150(A)(1), (5)(b), (7) (providing that: (1) when a defendant "is arrested pursuant to a bench warrant, he or she shall be taken without unnecessary delay for a hearing on the bench warrant;" (2) the defendant "shall not be detained without a bench warrant hearing . . . longer than 72 hours;" and (3) "[i]f a bench warrant hearing is not held within [seventy-two hours], the bench warrant shall expire by operation of law").

[4] Mason, however, did not attach any documentary support, and instead averred that he would provide such proof at a hearing.

- 3 -

the March 2024 contempt sentence was an illegal suspended sentence; (2) furthermore, the trial court had imprisoned him, since March 27, 2025, without a hearing; and (3) the court improperly imprisoned him for contempt without inquiring into his ability to pay. We note Mason abandoned his claim that he was compliant with the child support payments, and instead averred "he had no income" and his counsel had advised the Domestic Relations Office ("DRO") of this before his arrest. Petition for Writ of *Habeas Corpus*, 4/16/25, at unnumbered 2.

On the same day, the trial court issued the underlying order, without a hearing. The court permitted Mason's release only upon payment as follows:

> [I]t is hereby ordered that . . . Mason shall be released from incarceration **upon payment of $1,000** . . . to the [DRO] **plus $120 . . . Sheriff's fees**[.]
>
> It is further ordered that . . . Mason[] pay the remaining purge balance to the [DRO] no later than thirty . . . days from release from incarceration. Should [Mason] fail to pay the remaining purge balance a hearing will be scheduled before the court.

Order, 4/16/25 (unnecessary capitalization omitted and emphases added).

The trial court has explained that Mason "served one month in Dauphin County Prison." Memorandum Opinion, 6/13/25, at 2. Its opinion stated:

> [The April 16, 2025 order] gave [Mason] the right to purge himself again from the court's order of March 28, 2024. Specifically, prior to his one month release date from the Dauphin County Prison upon payment of $1,000, plus the Sheriff's fee of $120 for service of the warrant [*sic*]. [Mason] failed to pay this purge and instead served the entire one month prison sentence initially imposed by the court on March 8, 2024.

*Id*. (unnecessary capitalization omitted).

Mason filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

The trial court issued the above-quoted opinion. In the opinion, the court also agreed with Mason that, under Pa.R.Crim.P. 150, it should have held a hearing within seventy-two hours of his arrest. The court reasoned that at such a hearing, it could have determined: (1) whether Mason was indigent and thus entitled to the appointment of counsel; (2) whether his failure to pay the monthly purge amount was willful; (3) whether he had a continuing financial ability to pay; and (4) whether the court "could have ordered a purge amount . . . for his release to coerce compliance." *Id*. at 6-7. The court further explained that it "shall adopt internal procedures with [the DRO] to ensure that future cases that go to warrant for failure to comply with a purge payment are placed on [its] '150 list' for assignment of counsel if needed and promptly scheduled within 72 hours." *Id*. at 7. The court reasoned that "[d]ue process demand[ed]" such action. *Id*. Nevertheless, the court suggested that Mason's instant appeal was moot because he has completed the one-month sentence.

Mason presents seven issues for our review:

1. Did the trial court, by holding . . . Mason in contempt without inquiring into the current state of his finances on the record in hearing or making the necessary findings regarding the reasons for his failure to pay, abuse its discretion or err and violate Pennsylvania law as well as . . . Mason's due process rights?

2. Did the trial court err or abuse its discretion by issuing its January 28, 2025 Order for a bench warrant/capias based on allegations made by a Dauphin County Domestic Relations Enforcement Officer that . . . Mason had failed to make [$300 child] support payments required under the court's March 8, 2024 order without first filing and serving on . . . Mason a petition for civil contempt and conducting a contempt hearing?

3. Did the trial court err by issuing its January 28, 2025 order for a bench warrant/*capias* without due process making a finding, on the record, at a hearing, that . . . Mason had willfully failed to make child support payments required under the court's March 8, 2024 order?

4. Did the trial court err or abuse its discretion by issuing its January 28, 2025 order for a bench warrant/*capias* based on the allegation that . . . Mason had violated an illegal suspended sentence in its March 8, 2024 order?

5. Did the trial court err by failing to provide any hearing on the bench warrant/capias after his arrest and incarceration notwithstanding counsel's motion for a hearing filed the day after his arrest?

6. Did the trial court err by continuing to hold . . . Mason after its January 28, 2025 bench warrant/*capias* had expired by operation of law?

7. Did the trial court err or abuse its discretion by denying the habeas corpus and setting [a] $1,120 purge condition in its April 16, 2025 order without establishing, beyond a reasonable doubt, on the record at a hearing, that . . . Mason had the present ability to pay the purge condition?

Mason's Brief at 4-5.

In his first issue, Mason argues, contrary to the trial court's opinion, that this appeal is not moot.[5] Mason contends that although he has completed serving the one-month sentence set forth in the underlying order, the issues in this appeal "are capable of repetition while evading review." *Id*. at 21 (citations and quotation marks omitted). In support, Mason reasons that he continues to be subject to the underlying order and thus exposed to possible future bench warrants, contempt findings, and imprisonment under the order.

With regard to mootness, this Court has explained:

> [A]n actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. . . . An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.
>
> However, there are several well-recognized exceptions to the mootness doctrine. Specifically, Pennsylvania courts have recognized an exception to the mootness doctrine when a litigant remains subject to the court-ordered provisions that led to the original finding of contempt, since it may subject them to future sanctions on the same grounds. *See Barrett v. Barrett*, . . . 368 A.2d 616, 619 n.1 (Pa. 1977) (holding that the mootness exception applied even though contemnor's imprisonment

---

[5] Mason did not include a mootness issue in his court-ordered Pa.R.A.P. 1925(b) statement nor statement of questions involved. *See* Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the [Rule 1925(b)] Statement . . . are waived"), 2116 (stating "[t]he statement of the questions involved must state concisely the issues to be resolved" and "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). Nevertheless, this Court "may address mootness *sua sponte*, as we generally cannot decide moot or abstract questions, nor can we enter a judgment or decree to which effect cannot be given." *M.B.S. v. W.E.*, 232 A.3d 922, 927 (Pa. Super. 2020) (citations and quotation marks omitted). Accordingly, we do not find waiver of Mason's mootness issue.

sanction had concluded, since he remained "subject to [] orders of support and a failure to comply with them might again subject him to contempt proceedings")[.]

**Fetzer v. Fetzer**, 336 A.3d 1058, 1064 (Pa. Super. 2025) (some citations omitted).

In **Orfield v. Weindel**, 52 A.3d 275, 277-78 (Pa. Super. 2012), the trial court found the appellant, Weindel, in civil contempt for, *inter alia*, failing to pay child support. **See id**. at 276. The court imposed a sentence of six months' incarceration with a purge condition of paying arrears. **See id**. Weindel filed an appeal to this Court. **See id**. Meanwhile, he failed to pay the purge amount and served the entire six months' imprisonment sentence. **See id**. at 277. Although Weindel completed the sentence, this Court ruled that his appeal from the contempt order was not moot, because his issue was capable of repetition and apt to elude appellate review. **See id**. at 278. This Court reasoned that Weindel was "still subject to the trial court's order to pay monthly payments" toward arrears, and "[h]is noncompliance with this order would again subject him to civil contempt proceedings." **Id**.

As stated above, here, the trial court reasoned that Mason's instant appeal is "moot because he has served his one month sentence." Memorandum Opinion, 6/13/25, at 7.

The DRO, as appellee, avers this appeal is moot on the grounds: (1) the trial court has adopted procedures to protect Mason's, as well as other

- 8 -

defendants', due process rights; and thus (2) Mason "will not be subjected to the same action again."  DRO's Brief at 7.

After review of the record, we determine Mason's appeal is not moot. The procedural history in this matter is analogous to that in *Orfield*.  We acknowledge that the instant April 25, 2025 order appealed from was the denial of *habeas corpus*, whereas the disputed order in *Orfield* was the contempt order itself.  *See Orfield*, 52 A.3d at 276.  Nevertheless, the underlying order directed Mason to "pay the remaining purge balance to the [DRO within thirty] days from release of incarceration," or the court would schedule a hearing.  Order, 4/16/25.  Thus, regardless of whether Mason has served a one month sentence, he remains subject to additional proceedings for failure to comply with the order.

We appreciate the trial court's explanation that it will adopt procedures to ensure prompt scheduling of hearings generally in future cases. Nevertheless, we decline to find this statement in the trial court opinion, alone, is sufficient to preclude repetition of Mason's issue, such that we should deny review.  *See Orfield*, 52 A.3d at 278.  In so holding, we also emphasize that the trial court has acknowledged that the lack of a hearing following Mason's arrest infringed his due process rights.  *See* Memorandum Opinion, 6/13/25, at 7; *see also Fetzer* 336 A.3d at 1065 (stating that "[w]here the trial court acts beyond its authority by failing to afford contemnors their procedural due

process rights, the appeal will not be considered moot"). Accordingly, we proceed to review Mason's issues.

We observe that Mason has presented numerous, repetitive arguments throughout his brief. We summarize his main claims as follows: (1) the March 2024 contempt sentence was an illegal suspended sentence; (2) the trial court erred, under Pa.R.Civ.P. 1910.25-5, in finding Mason failed to comply with the contempt purge condition, without a hearing and inquiry into whether Mason's conduct was willful; (3) the court improperly issued a bench warrant because it did not first hold a hearing and it did not issue notice to him; (4) the issuance of the bench warrant under Pa.R.Civ.P. 1910.13-1 would have been improper; (5) following his arrest, the court violated Pa.R.Crim.P. 150 by failing to hold a hearing on the bench warrant within seventy-two hours; (6) Mason's imprisonment without a hearing also violated his Fourteenth Amendment and due process rights; (7) the court failed to hold a hearing on his petition for a writ of *habeas corpus*; and (8) the court failed to inquire into his ability to pay before setting forth a new purge condition in the April 2025 order.

We consider the following principles. "When a trial court grants or denies a petition for a writ of *habeas corpus*, we review that decision for a manifest abuse of discretion." **Chadwick v. Caulfield**, 834 A.2d 562, 567 (Pa. Super. 2003). "Traditionally, a writ of *habeas corpus* is a civil remedy that tests the legality of the detention." **Id**. at 566.

- 10 -

"Pennsylvania courts 'possess an inherent power to enforce their orders by way of the power of contempt.'"[6] *Fetzer*, 336 A.3d at 1065. The purpose of a civil adjudication of contempt is to coerce compliance with a court order, "with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order." *Id*. at 1065 (citation omitted).

_____

[6] This Court has described the distinction between civil contempt and criminal contempt:

> "[T]here is nothing inherent in a particular contemptuous act that classifies such act as either criminal or civil contempt. Rather, the distinction between the two is the court's dominant purpose in using the contempt power."

> \* \* \* \*

> [A] civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance.

> The civil-criminal classification of contempt exists solely for determination of a contemnor's procedural rights and a court's sentencing options. Quite simply, a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally.

*Fetzer*, 336 A.3d at 1065 (citations omitted).

Section 4345 of the Domestic Relations Code[7] governs punishment for contempt in a support action, and provides:

> (a) **General rule. —** A person who willfully fails to comply with any order under this chapter . . . may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> > (1) Imprisonment for a period not to exceed six months.
> >
> > (2) A fine not to exceed $1,000.
> >
> > (3) Probation for a period not to exceed one year.
>
> (b) **Condition for release. —** An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

23 Pa.C.S.A. § 4345(a)(1)-(3), (b).

This Court has explained:

[T]he characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive." To that end, "[e]very order which imposes punishment for civil contempt should state the condition upon which fulfillment will result in the release of the defendant or the remission of the fine." With specific reference to imprisonment based upon a finding of civil contempt, our Supreme Court has explained:

> Before a defendant may be committed for civil contempt, it is essential that it be clear what is required of him in order to purge himself of the contempt, and the commitment order should state the condition which when complied with will release him. In the absence thereof, a commitment for civil contempt is improper.

---

[7] **See** 23 Pa.C.S.A. §§ 101-8415.

Indeed, it is axiomatic that a litigant adjudged to be in civil contempt "holds the keys to the jailhouse door."

*Fetzer*, 336 A.3d at 1066 (citations omitted).

We first review a claim repeatedly raised throughout Mason's brief — that the March 8, 2024 sentence, accompanying his adjudication of contempt, was an illegal suspended sentence under the Pennsylvania Supreme Court's decision in *Thompson v. Thompson*, 223 A.3d 1272 (Pa. 2020) ("*Thompson II*").[8]

A "suspended sentence" is a "[a] sentence postponed so that the convicted criminal is not required to serve time unless he or she commits another crime or violates some other court-imposed condition." *Id*. at 1273 n.1. "The law is clear that an indefinitely suspended sentence is not a sentencing alternative and is illegal. 'It is the uncertainty surrounding such sentences, and the disorder they can engender, that prompts their prohibition.'" *Thompson v. Thompson*, 187 A.3d 259, 264 (Pa. Super. 2018) ("*Thompson I*") (citations omitted), *affirmed*, *Thompson II*, 223 A.3d 1272.

_____

[8] As noted above, Mason did not appeal from the adjudication of contempt, which carried the sentence in dispute. Nevertheless, "challenges to an illegal sentence can never be waived and may be raised *sua sponte* by this Court. *Commonwealth v. Simmons*, 262 A.3d 512, 515 n.3 (Pa. Super. 2021) (*en banc*). Mason has properly raised this issue in his petition for a writ of *habeas corpus*. *See also Chadwick*, 834 A.2d at (stating that "a writ of *habeas corpus* is a civil remedy that tests the legality of the detention"). Accordingly, we address this issue.

In **Thompson II**, the trial court found the appellant, Thompson, in civil contempt for failure to pay child support. **See id**. at 1274. The court issued an order, which stated:

[Thompson] is sentenced to [six] months [of] incarceration **to be suspended** upon the following conditions:

1. Remain current with paying full monthly support obligation by the last business day of each month, starting in February 2017.

2. Notify [the domestic relations office] of any change in income, address, or employment within 24 hours.

Failure to comply with the above conditions will result in a bench warrant being issued for [Thompson's] immediate arrest and incarceration of [six] months, without further hearing. If incarcerated, [Thompson] shall be released upon serving [six] months or acceptable purge conditions.

**Id**. at 1274 (emphasis added).

Thompson appealed, first to this Court, arguing that: (1) "a suspended sentence is not one of the enumerated punishments; (2) Section 4345(b) of the Domestic Relations Code "**requires a purge condition**" and a determination of whether "the alleged contemnor has the **present** ability to pay;" and (3) the statute "does not contemplate **future** ability to pay or provide for incarceration if there is an inability to pay in the future." **Thompson I**, 187 A.3d at 264 (some emphasis added). This Court agreed, concluding, in pertinent part, that the contempt order "provided no purge amount and contained no mechanism through which the trial court could consider [Thompson's] present ability to pay." **Id**. at 264. "In other words,

- 14 -

the [order] remove[d] from consideration a subsequent change in circumstances." *Id*.

Our Supreme Court granted discretionary review on Thompson's claim that the sentence imposed was illegal because the plain language of Section 4345 did not authorize suspended sentences. *Thompson II*, 223 A.3d at 1273; *see also* 23 Pa.C.S.A. § 4345 (quoted above). The Court agreed with Thompson's argument. *See id*. at 1279. Pertinently, the Court also specifically observed that the issue, of the absence of a required purge condition, was not before it:

> Before the Superior Court, [Thompson] also claimed that the trial court's order violated her due process rights because it provided that she would not be afforded an ability-to-pay hearing prior to incarceration *and failed to specify a purge condition that would result in her release from incarceration*. The Superior Court agreed with [Thompson] on this point and found the sentence violated her due process rights. [*Thompson I*, 187 A.3d at 264-65.]. *However, this determination is not implicated in the scope of the issue upon which we granted appeal.*

*Id*. at 1275 n.3 (emphases added).

In the instant appeal, Mason relies solely on the Supreme Court's *Thompson II* decision in arguing, baldly, that his March 8, 2024 contempt sentence was an illegal suspended sentence. Mason does not explain what aspect of his sentence rendered it a suspended sentence. Furthermore, he does not acknowledge that while the Superior Court reviewed, and partly granted relief on, the lack of a purge condition, the Supreme Court's decision did not implicate it. We determine that the lack of a purge condition in

- 15 -

***Thompson I*** and ***II***, as well as the trial court's failure to consider Thompson's present ability to purge herself of the contempt, distinguishes it from the instant sentence. Here, the contempt sentence did include the required purge condition, and the trial court properly inquired into Mason's ability, at that time, to pay the purge amount of $300 monthly. ***See*** 23 Pa.C.S.A. § 4345(b). Accordingly, Mason's reliance on ***Thompson II***, without discussion of the above, is misplaced, and we deny relief on this issue.[9]

Next, we address Mason's claim that the trial court erred in failing to hold a hearing, on his alleged failure to comply with the purge condition, as required by Rule of Civil Procedure 1910.25-25. ***See*** Mason's Brief at 39, 50. Mason maintains that the denial of hearing infringed upon his due process rights.

Pennsylvania Rule of Civil Procedure 1910.25-5, falling within the chapter governing support actions, provides:

> (a) ***No respondent may be incarcerated as a sanction for contempt without an evidentiary hearing before a judge.***
>
> (b) The court shall make a finding, on the record, as to whether the respondent, based upon the evidence presented at the hearing, does or does not have the present ability to pay the court-ordered amount of support.

---

[9] Even if Mason had also relied on ***Thompson I***, no relief would be due because, as stated above, the contempt sentence in that case is distinguishable from the one in this appeal.

- 16 -

> (c) An order committing a respondent to jail for civil contempt of a support order shall specify the conditions the fulfillment of which will result in the release of the respondent.

Pa.R.Civ.P. 1910.25-5(a)-(c) (emphasis added). "In construing the Rules of Civil Procedure, this Court looks to the rules of statutory construction. The intent of our Supreme Court controls, and the best evidence of that intent is the rule's plain language." ***Talmadge v. Ervin***, 236 A.3d 1154, 1159 (Pa. Super. 2020).

After review of the record, including the trial court's opinion that it should have conducted a hearing, we determine the court abused its discretion in denying Mason's petition for a writ of *habeas corpus*. ***See Chadwick***, 834 A.2d at 567. The plain language of Rule of Civil Procedure 1910.25-5(a) required the trial court to conduct a hearing before it imprisoned Mason as a sanction under the March 2024 contempt order. ***See*** Pa.R.Civ.P. 1910.25-5(a) (stating that "[n]o respondent may be incarcerated as a sanction for contempt without an evidentiary hearing before a judge"); ***see also Talmadge***, 236 A.3d at 1159. Furthermore, Rule 1910.25-5(b) required the court to make a finding on the record, "based upon evidence presented at the hearing," as to whether Mason had the present ability to pay the court-ordered amount of support. Pa.R.Civ.P. 1910.25-5(b).

It is not disputed that the trial court did not conduct such a hearing, nor make the required findings of fact as to any willfulness by Mason to violate the March 2024 contempt order. The court also did not inquire into his present

ability to comply with the contempt order, or to pay the new purge condition in the April 2025 order. However, the trial court's opinion agreed with Mason that it "should have scheduled a hearing within 72 hours of [his] arrest," determined whether Mason was indigent and whether his failure to pay the monthly purge amount was willful, and evaluated his present financial ability to pay. Memorandum Opinion, 6/13/25, at 6-7. We determine the lack of a hearing violated Mason's due process rights and the provisions of Rule of Civil Procedure 1910.25-5. Additionally, we note: the lack of any filing in the certified record setting forth an allegation that Mason failed to comply with his purge condition; and the discrepancy in the filing date of the issuance of the bench warrant. We emphasize that at no time, despite the filing of two petitions for relief, did Mason have an opportunity to respond, before the trial court, to the allegations that he failed to comply with the purge condition or to contest his imprisonment. In sum, the underlying procedural posture denied Mason's ability to "hold[] the keys to the jailhouse door," with respect to his contempt adjudication. *Fetzer*, 336 A.3d at 1066.

Although we vacate and remand pursuant to Rule of Civil Procedure 1910.25-5, at this juncture we address Rule of Criminal Procedure 150, as well as Rule of Civil Procedure 1910.13-1. As stated above, in reasoning that it should have held a hearing following Mason's arrest on the bench warrant, the trial court relied on Rule of *Criminal* Procedure 150, entitled "Bench Warrants." *See* Memorandum Opinion, 6/13/25, at 6-7. On appeal, Mason

- 18 -

also argues extensively in reliance on Rule 150. That rule provides, without qualifiers as to the reason for the bench warrant, that "when a bench warrant is executed:" (1) the defendant "shall be taken without unnecessary delay for a hearing on the bench warrant;" (2) "the bench warrant hearing may be conducted using . . . audio-visual communication;" (3) generally, the defendant "shall not be detained without a bench warrant hearing . . . longer than 72 hours;" and (4) "[i]f a bench warrant hearing is not held within [seventy-two hours,] the bench warrant shall expire by operation of law." Pa.R.Crim.P. 150(A)(1), (2), (5)(b), (6)-(7).

Pennsylvania courts, however, have not addressed the application of the Rules of Criminal Procedure to a bench warrant or arrest that arises from the adjudication of a civil contempt. *See Barrett v. Barrett*, 368 A.2d 616, 619 (Pa. 1977) (stating that "it is clear that even where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedures and confers distinct procedural rights; the two may not be casually commingled"). In the case *sub judice*, because we conclude that Rule of Civil Procedure 1910.25-5(a), which falls within the section specifically governing "Actions for Support," required a hearing, we need not reach the question of whether Rule of Criminal Procedure 150, applying to an arrest following bench warrant in a criminal matter generally, also required a hearing. *See* Pa.R.Civ.P. 1910.25-5(a) (providing that "[n]o respondent may be

incarcerated as a sanction for contempt without an evidentiary hearing before a judge").

Next, we consider Mason's extensive argument that the bench warrant "could not have properly been issued in compliance with" Rule of Civil Procedure 1910.13-1. Mason's Brief at 33. Mason reasons: (1) this rule governs bench warrants solely for a defendant's failure to appear at a hearing or conference; and (2) here, there was no such hearing and thus no failure to appear.

First, we observe that nothing in the trial docket indicates, and Mason does not cite the place in the record that would show, that the trial court issued the bench warrant pursuant to Rule 1910.13-1. In any event, we would agree that this rule applies only to a bench warrant issued for a party's failure "to appear at a conference and/or hearing as directed by order of court." Pa.R.Civ.P. 1910.13-1(a). Unlike Rule of Criminal Procedure 150, which does not limit itself to bench warrants issued for any particular reason, Rule 1910.13-1 is entitled, "Failure or Refusal to Appear Pursuant to Order of Court. Bench Warrant." The first line of subsection (a) refers to when "a party fails to appear at a conference and/or hearing." *Id*. The comment specifies that this rule applies "only to a party who fails to appear at a support conference or hearing as directed by an order of court." Pa.R.Civ.P. 1910.13-1, *comment*. Additionally, the following rule, Rule 1910.13-2, sets forth the form to request a bench warrant under Rule 1910.13-1. This form begins with: "1. --- did not

appear for a conference and/or hearing in the Court of Common Pleas of ---
County on the --- day of ---, 20---[.]" Pa.R.Civ.P. 1910.13-2(a).

Nevertheless, we note that Subsection (d) of Rule of Civil Procedure
1910.13-1 sets forth procedures analogous to those in Rule of Criminal
Procedure 150: (1) "[w]hen an individual is arrested pursuant to a bench
warrant, he or she shall be taken without unnecessary delay for a hearing on
the bench warrant;" (2) "the bench warrant hearing may be conducted using
. . . audio-visual communication;" (3) generally, "[t]he individual shall not be
detained without a hearing on the bench warrant longer than 72 hours;" and
(4) "[i]f a bench warrant hearing is not held within [seventy-two hours,] the
bench warrant shall expire by operation of law." Pa.R.Civ.P. 1910.13-1(d)(1),
(2), (5), (7).

We further note that no other rule, within the "Actions for Support"
chapter, addresses bench warrants. Nevertheless, given the near-identical
language between Rule of Civil Procedure 1910.13-1(d) and Rule of Criminal
Procedure 150(A), we refer to the Pennsylvania Supreme Court the question
of whether an additional Rule of Civil Procedure, governing an arrest following
the alleged failure to purge a civil contempt adjudication, would be beneficial
to the bench and bar. The appropriate committee may investigate the need
for such a rule, and the appropriate parameters.

We summarize that in light of the particular circumstances presented,
although Mason has completed a one month-imprisonment sentence, we

determine this appeal is not moot. We vacate the trial court's April 16, 2025 order, which imposed a new purge condition. We remand for the trial court to conduct a hearing, pursuant to Pa.R.Civ.P. 1910.25-5, within thirty days of the date of this memorandum. The trial court may address the issues of: whether Mason has complied with the March 8, 2024 contempt order; whether any non-compliance has been willful; and if so, whether a new purge condition would be appropriate, after inquiry into Mason's present ability to pay. The court may receive evidence and undertake any necessary actions to facilitate review.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/5/2026